**Sarah M. Clerget**
Chief Legal Counsel
Montana Department of Fish, Wildlife and Parks
PO Box 200701
Helena, MT 59620-0701
Phone: (406) 444-4573
Email: sclerget@mt.gov

*Attorney for State of Montana and Montana Department of Fish, Wildlife & Parks Defendant Intervenor Applicants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY; WESTERN WATERSHEDS PROJECT; AND PAT MUNDAY,

Plaintiffs,

v.

DEB HAALAND, in her official capacity as Secretary, U.S. Department of the Interior; MARTHA WILLIAMS, in her office capacity as Director, U.S. Fish And Wildlife Service,

Defendants,

and

STATE OF MONTANA and MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS,

Defendant Intervener Applicants.

Case No. CV-23-02-BU-BMM

**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY STATE OF MONTANA AND MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS**

The State of Montana and Montana Department of Fish, Wildlife and Parks (together, "MFWP") submit the following Brief in Support of its Motion to Intervene under Fed. R. Civ. P. 24(a)(2) or 24(b).

## INTRODUCTION

Plaintiffs Center for Biological Diversity, *et al.*, seek judicial review of the 2020 decision by the United States Fish and Wildlife Service ("Service") not to list the distinct population segment ("DPS") of Arctic grayling in the Upper Missouri River Basin as a threatened species under the Endangered Species Act ("ESA"). *See generally,* 85 Fed. Reg. 44,478 (July 23, 2020).

MFWP seeks defendant intervention as a matter of right under Fed. R. Civ. P. 24(a). Alternatively, Montana moves to be permitted to intervene as a defendant, pursuant to Fed. R. Civ. P. 24(b).

## FACTUAL BACKGROUND

The State of Montana, through its Department of Fish, Wildlife and Parks ("MFWP") and its Fish and Wildlife Commission ("Commission"), has specific statutory mandates for the supervision, management, and regulation of fish and fish habitat. *See* §§ 87-1-201 and 87-1-301, MCA.

The MFWP is required by law to implement programs that manage fish in a manner that prevents the need for listing under either § 87-5-107, MCA, or the ESA, and manage a species that is a potential candidate for listing under either

§ 87-5-107, MCA, or the ESA in a manner that assists in the maintenance or recovery of those species. § 87-1-201(9)(a)(i)–(ii), MCA.

As part of these duties, MFWP has played a central role in developing and implementing all aspects of the Candidate Conservation Agreement with Assurances ("CCAA") in the Big Hole River drainage. 79 Fed. Reg. 49400-49405 (August 20, 2014). U.S. Fish and Wildlife Serv., Revised 12-Month Finding on a Petition to List the Upper Missouri River Distinct Population Segment of Arctic Grayling at 82 (June 29, 2020) ("2020 Finding") (available at https://www.regulations.gov/search?filter=FWS-R6-ES-2020-0024-0002). Through long-term agreements with non-federal landowners, the Big Hole CCAA program has effectively established habitat conservation and improvement efforts in the majority of occupied and essential Arctic grayling habitat in the Big Hole River drainage - which drainage sits on 90% private land and composes ~60% of the fluvial DPS habitat. *Id.* at 55, 83, 180.

If successful, Plaintiffs' efforts may result in MFWP being divested of its authority to continue managing Arctic grayling and Arctic grayling habitat within its borders and that authority being vested instead with the federal government under the auspices of the ESA.

## ARGUMENT

MFWP moves to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2). Alternatively, MFWP moves for intervention with leave of the court under Fed. R. Civ. P. 24(b).

### A. MFWP May Intervene as a Matter of Right Under Fed. R. Civ. P. 24(a).

Fed. R. Civ. P. 24(a) governs intervention as a matter of right and provides in relevant part:

> On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit Court of Appeals thus requires an applicant seeking to intervene as a matter of right to show that: (1) the application is timely; (2) the applicant has a significant protected interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

The Ninth Circuit emphasizes the tradition of liberal construction of Rule 24 in favor of applicants for intervention. *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d

525, 527 (9th Cir. 1983); *see also U.S. v. Or.*, 839 F.2d 635, 637 (9th Cir. 1988). Rule 24's requirements are thus interpreted broadly in favor of intervention. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). This liberal policy favoring intervention advances the "efficient resolution of issues and broadened access to the courts." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (internal quotations omitted).

MFWP meets the Ninth Circuit's four-part test for intervention as a matter of right. MFWP's motion is timely, MFWP has significant protected interests that may be impaired if Plaintiffs prevail, and the federal Defendants cannot adequately represent Montana's interests as a sovereign state.

**1. MFWP's motion to intervene is timely.**

In determining whether a motion to intervene is timely, a court "focus[es] on three primary factors:" (1) stage of proceedings; (2) prejudice to other parties; and (3) reason for and length of delay. *W. Watersheds Project*, 22 F.4th at 836 (9th Cir. 2022). The mere lapse of time, in and of itself, is not sufficient for a court to determine that a motion to intervene is not timely. *See County of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986) *and U.S. v. Or.*, 913 F.2d 576, 588 (9th Cir. 1990) (passage of 20 years alone not dispositive). Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings." *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th

Cir. 1996); *Idaho Farm Bureau Fed'n. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion, filed 4 months after complaint, 2 months after answer filed, and prior to hearing on preliminary injunction motion filed 1 month prior, was timely).

MFWP meets all three factors for timeliness of an intervention motion. First, as the complaint was filed in late January 2023, the case is in its very early stages. The federal Defendants only filed their answer on April 4, 2023, and the Court has not made any substantive rulings in this matter. Doc. 5, Answer (April 4, 2023). On August 4, 2023, Defendant's filed their Notice of Lodging the Administrative Record. Doc. 9. The next deadline in this matter is September 22, 2023. Doc. 8, Order. Second, because this case is currently in its early stages with no substantive motions or rulings made, no party will suffer prejudice by MFWP's intervention. *See N.W. Forest Res. Council*, 82 F.3d at 837. Finally, because the case is in the early stages, there has, practically speaking, been no substantive delay by MFWP in moving to intervene.

Accordingly, MFWP meets the timeliness requirement to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

**2. MFWP has significant protected interests in this matter.**

Fed. R. Civ. P. 24(a)(2) "does not require a specific legal or equitable interest[.]" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citation omitted). Instead, it is generally sufficient that "the interest

is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (internal citation omitted). Moreover, a potential intervener's interest "need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Id.* (internal citation omitted).

Congress acknowledged in § 6 of the ESA, 16 U.S.C. § 1535, that all states have a unique concern for the preservation and enhancement of fish, wildlife, and plants. In fact, § 6 of the ESA directs the Secretary of Interior to cooperate with the states "to the maximum extent practicable." Moreover, the United States Supreme Court has recognized a state's interest in managing and preserving wildlife for the benefit of its citizens. *See Baldwin v. Fish and Game Comm'n.,* 436 U.S. 371, 377, 385–86 (1978). In addition, the State of Montana through the MFWP and its Commission has specific statutory mandates to manage and regulate fish and fish habitat. *See* §§ 87-1-201 and 87-1-301, MCA.

In the case of the Arctic grayling, years of successful management by MFWP has promoted "a high level of resilience in most populations within the DPS." 85 Fed. Reg. 44,478, 44,480 (July 23, 2020). Notably, conservation actions since 2006 and the implementation of the Big Hole CCAA have reduced water temperatures in tributaries, increased instream flows, "connected almost all core

habitat so Arctic grayling can access thermal refugia," and improved riparian health. 2020 Finding at 175.

MFWP contains most of the habitat and Arctic grayling that exist in the current range of the DPS. 2020 Finding at 12–13. MFWP's interest in continuing to manage Arctic grayling populations and habitat within its borders, and pursuant to its statutory authority, is a significant protected interest for purposes of Fed. R. Civ. P. 24(a).

**3. MFWP's interests will be impaired if the Arctic grayling is listed under the ESA.**

A potential intervenor has a "sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *State ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2006). An applicant for intervention need only show that disposition of the case may impair its protectable interest. *See City of Los Angeles*, 288 F.3d at 401.

Plaintiffs' complaint – if successful – could ultimately result in the Arctic grayling being listed under the ESA, thus stripping MFWP of its ability to continue managing the species. If listed, Arctic grayling management would be dictated by the provisions and implementing regulations of the ESA and carried out primarily by the Service, largely to the exclusion of MFWP or Montana law. Further, if the Arctic grayling is listed, the Service may designate critical habitat for the species,

which could impact land use decisions in Montana. *See* 16 U.S.C. § 1533(a)(3); 50 C.F.R. § 424.12.

In each of these instances, MFWP's ability to carry out its legally protected interest in management of Arctic grayling and Arctic grayling habitat in the state would be impaired for purposes of Fed. R. Civ. P. 24(a).

**4. Existing parties are not able to adequately represent MFWP's interests.**

MFWP and the Service may largely agree on the conservation status of Arctic grayling. Still, other fundamental differences between the two ensure that they bring differing perspectives and that the Service cannot adequately represent MFWP's interests in this case.

The Ninth Circuit has stated that:

> The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. However, the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate.

*S.W. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 822-23 (9th Cir. 2001).

In determining adequacy of representation, the court considers (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervener would offer any necessary elements to the proceedings that other parties would neglect. *City of Los Angeles*,

288 F.3d at 398 (internal citation omitted). Because of the separate sovereign interests possessed by individual states, the Ninth Circuit has observed:

> It would be especially unbecoming for the federal courts to pass on a great question in which a sovereign state of the Union has a direct interest, if not as lord paramount, at least as representing all its citizens, without affording it an opportunity to be heard before the legal proceedings in which the question is involved are concluded.

*Cal. v. U.S.*, 180 F.2d 596, 600 (9th Cir. 1950) (internal citation omitted).

The Service and MFWP agree that the Arctic grayling should not be listed, but they are not necessarily similarly situated with respect to this matter. At the heart of this difference is the competing sovereign interests of the Service – as an executive branch agency of the federal government – in carrying out its statutory duties as set forth in the ESA, versus the State of Montana's interests in carrying out its own sovereign duties to its citizenry, including its own duly enacted laws for management of wildlife within its own borders. *See* §§ 87-1-201 and 87-1-301, MCA. Depending on the outcome of this matter, it is likely that either federal law or state law will guide Arctic grayling management in Montana.

The U.S. District Court for the District of Idaho, in granting the State of Idaho's motion to intervene under Fed. R. Civ. P. 24(a) in a different ESA listing case, further elaborated on the differing postures of the Service and an intervening state's interests:

> On one level, the applicants and the USFWS share an objective: Both seek to affirm the 'precluded' portion of the USFWS's decision. But

> they diverge on their 'ultimate objective,' which is the test the Court must apply. The ultimate objective of the applicants is to prevent, or at least delay as long as possible, the effects of listing; the USFWS simply seeks confirmation of its administrative process. Because they do not share the same ultimate objective, no presumption arises of adequate representation. The applicants need only make a 'minimal' showing, as discussed above, that the representation of their interests by the USFWS 'may be' inadequate.

*W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, 2011 U.S. Dist. LEXIS 74485 at 10-11 (D. Idaho 2011).

Likewise, in the present matter, the Service largely seeks "confirmation" of its administrative process resulting in the decision to maintain the Arctic grayling's delisted status. On the other hand, MFWP seeks to retain the ability to manage Arctic grayling and Arctic grayling habitat within its borders, pursuant to its own state laws, as it is currently doing. The Service and MFWP differ on the "ultimate objective" and, accordingly, the Service cannot adequately represent MFWP's interests here.

MFWP's motion to intervene is timely, it has significant protected interests in the outcome of this matter that may be impaired, and no other party is able to represent MFWP's interests in the matter adequately. Accordingly, MFWP meets the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a).

**B. Alternatively, MFWP Should Be Permitted to Intervene Under Fed. R. Civ. P. 24(b).**

In the event this Court does not grant intervention as a matter of right, MFWP should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B), which provides in part:

> On timely motion, the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention under Rule 24(b) requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch*, 712 F.3d 1349, 1353 (9th Cir. 2013) (internal citation omitted).

**1. A federal question creates jurisdiction.**

The first requirement for permissive intervention, independent jurisdiction, is satisfied in this instance. Federal question jurisdiction exists because this case involves a federal administrative action reviewing federal law under the ESA. *See* 28 U.S.C. § 1331.

**2. MFWP's motion is timely.**

As set forth above, MFWP's motion is timely and will not delay these proceedings. This Court has not made any substantive rulings in this matter and the parties cannot be prejudiced by MFWP's intervention. MFWP has tendered its

proposed answer with this motion and brief in support and is prepared to participate in this litigation on the same schedule as the federal Defendants.

**3. MFWP has a defense that shares with the main action common questions of law or fact under Fed. R. Civ. P. 24(b)(1)(B).**

The defenses MFWP asserts in its proposed answer are necessarily the same issues of law the federal Defendants will raise, namely that the decision to not list the Upper Missouri River Distinct Population Segment of Arctic grayling as an endangered or threatened species under the ESA is supported by substantial evidence, is not arbitrary and capricious, and is otherwise in accordance with law. (*See* MFWP's Proposed Answer.)

The criteria for permissive intervention are met in this instance and so MFWP respectfully requests this Court grant intervention in order for MFWP to represent its interests in this action.

**CONCLUSION**

For the foregoing reasons, MFWP respectfully requests this Court grant its unopposed motion to intervene in this matter.

Dated this 11th day of September, 2023.

/s/ Sarah M. Clerget
**Sarah M. Clerget**
Chief Legal Counsel

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rules 7.1 and 24.1 of the Rules of Procedure of the United States District Court for the District of Montana, I certify the following concerning the Brief in Support of Unopposed Motion to Intervene by State of Montana and Montana Department of Fish, Wildlife and Parks:

1. The document is double-spaced except for footnotes and quoted and indented material;

2. The document is proportionally spaced, using Times New Roman, 14-point font; and

3. The document contains 2,987 words as calculated by Microsoft Word.

/s/ Sarah M. Clerget
**Sarah M. Clerget**
Chief Legal Counsel